*In re* SNYDER.

MASON *v.* JOHNSON.

1. COURTS — PROBATE COURT — CIRCUIT COURT — EFFECTIVENESS OF ORDERS.

Order of probate court adjudicating that illegitimate child, theretofore in maternal grandmother's home, was without proper custody or guardianship, placing her in the permanent custody of the court and committing her to a children's home with power to consent to adoption remained effective during pendency of appeal to circuit court in the absence of a specific order of latter court suspending the probate order (CL 1948, § 712A.22).

2. ADOPTION—VALIDITY OF PROCEEDINGS.

The validity of adoption proceedings, taken under a probate order authorizing adoption of child, would be dependent upon final affirmance of order from which an appeal had been taken.

---

REFERENCES FOR POINTS IN HEADNOTES

[2]  1 Am Jur, Adoption of Children, § 50.
[2]  Interlocutory ruling of one judge as to custody of infant as binding on another judge in same case.  132 ALR 76.
[5, 6]  27 Am Jur, Infants, § 105 *et seq.*

3. APPEAL AND ERROR—PROBATE COURT—ADOPTION—PARTIES—CIR-
CUIT COURT—AGGRIEVED PARTIES.

Intervenors, the aunt and uncle of putative father of an ille-
gitimate child, who had petitioned for adoption of the child
and been made parties by circuit court on appeal from pro-
bate court's order adjudicating that child who had thereto-
fore resided with her maternal grandmother was without
proper custody or guardianship, were not without right to
appeal since they were aggrieved by an order of the cir-
cuit court, reversing probate order, which would terminate
their parental rights under adoption proceedings (CL 1948,
§ 712A.22).

4. SAME—PROBATE COURT—QUESTIONS REVIEWABLE.

The question of whether or not an illegitimate child was with-
out proper custody or guardianship at time probate order
so adjudicating was entered was the sole question on appeal
from such probate order, not whether the aunt and uncle
of the putative father, who had petitioned for adoption of
the child would be proper parents and provide a fine home
for the child.

5. INFANTS—CUSTODY—PROBATE COURT.

In determining proper custody of a child under probate code
conferring jurisdiction and powers on the juvenile division
of the probate court, similar considerations to those in ha-
beas corpus and chancery cases relative to custody of minors
are applied, the inquiry not being limited merely to whether
the child is fed and clothed but whether it is being pro-
vided proper support, education, medical, surgical and other
care necessary for its health, morals and well-being, and
wholesome surroundings.

6. SAME—CUSTODY—PROBATE COURT—EVIDENCE.

Illegitimate child with a congenital disease and a history of
poor health while very young and who had a fever when
committed to children's home when taken from custody of
maternal grandmother was properly found to have been
without proper custody or guardianship where such grand-
mother had her 6 children and 4 boarders living in 4 bed-
room house, was involved in marital and financial difficul-
ties and her many duties in and outside of the home pre-
cluded her giving the care, guidance and control the child
required (CL 1948, § 712A.2).

7. COSTS—REINSTATEMENT OF REVERSED PROBATE ORDER.
   No costs are allowed on appeal from circuit court order reversing order of probate court where circuit court is ordered to affirm such order.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted June 6, 1950. (Docket No. 12, Calendar No. 44,771.) Decided September 11, 1950.

Guardianship proceedings in the matter of Caren Yuvone Snyder, a minor. Order placing her in care of Muskegon Children's Home. Vera Johnson, her maternal grandmother, appealed. Roy E. Mason and wife, adopting parents and the chief probation officer intervened. Order reversing probate court. Intervenors Mason appeal. Reversed and remanded for entry of order affirming order of probate court.

*Robert A. Carr, Jr.,* for intervenors Mason.

*George D. Stribley,* for Vera Johnson.

BUTZEL, J. The juvenile division of the probate court for the county of Muskegon adjudicated Caren Yuvone Snyder, a minor, to be without proper custody or guardianship under the provisions of CL 1948, § 712A.2 (a6) (Stat Ann 1949 Cum Supp § 27.3178 [598.2 (a6)]), and entered an order placing her in the permanent custody of the court and committing her to the Muskegon Children's Home with power to consent to adoption. Some time later upon appeal by Vera Johnson, the child's maternal grandmother, the order was set aside by the circuit court. The intervenors by leave in the circuit court proceedings, to whose petition for adoption the Muskegon Children's Home had consented, have appealed to this Court.

Caren was born on November 16, 1944, to Hazel Snyder, a single woman, and became an orphan upon

the death of her mother in July of the following year. From the time of her birth until the probate order of June 10, 1946, Caren resided in the home of her maternal grandmother in Whitehall, Michigan, except for intervals when she was in the care of the intervenors, who are the aunt and uncle of her putative father. Since October, 1946, she has continuously lived in the intervenors' home in Hart, Michigan.

From the probate determination on June 10, 1946, Mrs. Johnson filed an appeal on July 12, 1946. On June 15, 1946, the intervenors filed a petition to adopt Caren. As the record contains no specific order of the circuit court suspending the probate order, that order remained effective during the pendency of the appeal. CL 1948, § 712A.22 (Stat Ann 1949 Cum Supp § 27.3178[598.22]). However, the validity of any adoption proceedings taken under the probate order would depend upon the final affirmance of such order.

Mrs. Johnson's counsel filed a default on February 14, 1947. The circuit court set the default aside on April 24th of the same year and held a hearing on the merits. The court filed an opinion for reversal of the probate determination and entered an order to that effect. This particular order was thereafter stayed.

The Muskegon Children's Home consented to Caren's adoption by the intervenors on June 17, 1947, and the probate court for the county of Oceana immediately entered an order terminating the rights *in loco parentis* of that institution.

Subsequently the chief probation officer of the probate court for the county of Muskegon and the intervenors filed separate petitions to intervene in the circuit court proceedings and leave was granted by an order of June 23, 1947. Two additional hearings were held and proofs taken as to whether Caren was without proper custody or guardianship while in

the home of her maternal grandmother. On February 15, 1949, the circuit court entered an order setting aside the probate order and returning Caren to the custody of Mrs. Johnson. The intervenors appeal to this Court.

We cannot sustain the contention that the intervenors were without right to appeal. They were made parties to the action by the circuit court and were aggrieved by its order which would terminate their parental rights under any adoption proceedings which were instituted in accordance with the original order of the probate court for the county of Muskegon.

While the record shows that the intervenors would be excellent parents and provide a fine home for Caren, that is not the consideration presently before this Court. We are solely concerned with the question of whether the child was without proper custody or guardianship at the time of the probate adjudication.

The testimony shows that Mrs. Johnson had 6 of her children and 4 boarders living in her 4-bedroom house; that her 6-year-old daughter had shared a bedroom with an adult male boarder; that 4 of her children occupied another bedroom; that she was involved in marital difficulties and had filed a bill for divorce; that she required and received welfare assistance for a short period after the separation from her husband; that she felt she could provide for Caren if her husband provided for his children; that Hazel was not the only member of the family to become pregnant while unmarried and living at home; that Caren had a fever at the time of her commitment to the Muskegon Children's Home; and that Caren also had bruises and discolorations on her body at that time, apparently from a fall.

The record also contains testimony that a daughter was allowed to engage in illicit relations in the

Johnson home and that Mrs. Johnson has conducted herself improperly with a named man. These particular charges were denied, and we shall not consider them in reaching our decision.

Mrs. Johnson was shown to be a hard working woman who was very much occupied in the support and maintenance of her family and home. However, we are impressed that with her many duties in and outside her home, she would be unable to devote the time and attention necessary to properly look after this child of tender years, who has a congenital disease and a history of poor health while very young. It appears that Mrs. Johnson would not be able to provide the care, guidance and control that the child requires.

The best interests of the child have been the paramount consideration in habeas corpus proceedings (*In re Goldinger*, 207 Mich 99; *In re Leu*, 240 Mich 240; *Liebert* v. *Derse*, 309 Mich 495), and in chancery cases (*Smith* v. *Ritter*, 292 Mich 26; *Foxall* v. *Foxall*, 319 Mich 459) involving the custody of minors. The jurisdiction and powers of the juvenile division of the probate court are governed by chapter 12a of the probate code (*People* v. *Tillard*, 318 Mich 619), which provides that it shall be liberally construed to the end that the child will receive the care, guidance and control that will be conducive to its welfare and the best interests of the State. CL 1948, § 712A.1 (Stat Ann 1949 Cum Supp § 27.3178 [598.1]). In this proceeding which was brought under section 2, subsection (a6) of this statute, we apply similar considerations to those which govern other custody cases. The inquiry is not limited merely to whether the child is fed and clothed, but also extends to whether it is being provided proper support, education, medical and surgical care and other care necessary for its health, morals and wellbeing. The wholesomeness of the surroundings is a

material element in determining whether the child is receiving proper care, guidance and control.

In applying the foregoing to the case at bar, we are convinced that the probate court made a proper adjudication and that the order of the circuit court is against the great weight of the evidence. The cause is remanded to the circuit court to enter a judgment affirming the order of the probate court. No costs will be allowed.

BOYLES, C. J., and REID, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.